UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RUDOLPH BETANCOURT, Individually,

    Plaintiff,

vs.

AD1 LBV1, LLC, a Delaware Limited Liability Company, doing business as Crowne Plaza Orlando - Lake Buena Vista,

    Defendant.

_____/

Case No. 6:22-cv-1291

## COMPLAINT
*(For Injunctive Relief)*

Plaintiff, RUDOLPH BETANCOURT, Individually, and on behalf of all other mobility impaired individuals similarly situated, (sometimes referred to as "Plaintiff"), hereby sues the Defendant, AD1 LBV1, LLC, a Delaware Limited Liability Company, doing business as Crowne Plaza Orlando - Lake Buena Vista, (sometimes referred to as "Defendant"), for Injunctive Relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.* ("ADA").

1. Plaintiff, Rudolph Betancourt, resides in Fenwick, MI, in the County of Montcalm.

2. Defendant's property, Crown Plaza Orlando - Lake Buena Vista is located at 8686 Palm Parkway, Orlando, FL 32836, in the County of Orange.

3. Venue is properly located in the Middle District of Florida because venue lies in the judicial district of the property situs. The Defendant's property is located in and does business within this judicial district.

4. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. *See also*, 28 U.S.C. § 2201 and § 2202.

5. Rudolph Betancourt is a Michigan resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA. Mr. Betancourt is a double amputee who uses either prosthetic devices and/or a wheelchair for mobility.

6. Mr. Betancourt regularly drives to South Florida from Michigan, where he resides. While driving from Michigan to South Florida, Mr. Betancourt regularly visits Orlando, FL along his route to South Florida, for vacation and to visit his cousin who lives nearby, and also to enjoy the weather, the plethora of tourist attractions, and dining establishments that the area offers, and to advocate for disability rights.

7. Mr. Betancourt stayed as a hotel guest at the subject hotel on March 5, 2022, and he intends to return to the subject hotel if the hotel is made accessible for his use on January 14, 2023, pursuant to a confirmed reservation, or sooner, to avail himself of the goods and services at the property and to confirm that the property is brought into compliance with the ADA. He also intends to continue coming to

Orlando, FL as a resting stop on his regular trips to South Florida.

8. The barriers to access at the subject property have endangered his safety.

9. Defendant owns, leases, (or leases to), or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104. Defendant is responsible for complying with the obligations of the ADA.

10. According to the public records of Orange County, the subject hotel was constructed on 1988, and the Defendant acquired same on September 26, 2017.

11. The subject property, Crown Plaza Orlando - Lake Buena Vista, is operated by a private entity whose operation affects commerce and is a public accommodation as defined by the ADA and its implementing regulations. *See*, 28 C.F.R. § 36.104.

12. Plaintiff has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to the property as described. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant. Plaintiff desires to visit the Crown Plaza Orlando - Lake Buena Vista, not only to avail himself of the goods and services available at the property, but to assure himself that this property is in compliance with the ADA so that he and others similarly

situated will have full and equal enjoyment of the property without fear of discrimination.

13. The Defendant has discriminated against the individual Plaintiff by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182, *et seq.*, as described in paragraph 14.

Title III prohibits the failure to design and construct hotels built for first occupancy after January 26, 1993, to be readily accessible to and useable by in individuals with disabilities in accordance with the ADA Standards for Accessible Design (ADA Standards), 28 C.F.R. part 36, app A 42 U.S.C. § 12182(a)(1); 28 C.F.R. 36.401, 36.406(a).

Title III prohibits the failure to make alterations to hotels in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and useable by individuals with disabilities in accordance with the ADA Standards. 42 U.S.C. § 12183(a)(2); 28 CFR §§ 36.402, 403, 36.406(a).

Structures that existed before January 26, 1992, or facilities that the present owner did not design or construct, and which have not been altered since that date, need not meet the same design and implementation standards as facilities build after January 26, 1993. In such cases, the ADA states that discrimination includes a private entity's "failure to remove architectural barriers . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv) "Where removal is not readily

achievable," failure of the entity to make goods, services and facilities "available through alternative methods if such methods are readily achievable," may constitute discrimination under the ADA. 42 U.S.C. § 12182 (b)(2)(A)(iv).

The ADA defines "readily achievable as "easily accomplishable and without much difficult or expenses." 42 U.S.C. §12181(9)

Congress included in the ADA factors to be considered in evaluating whether removal of a barrier is "readily achievable." These factors are (1) nature and cost of the action; (2) overall financial resources of the facility or facilities involved; (3) number of persons employed at such facility; (4) effect on expenses and resources; (5) impact of such action upon the operation of the facility; (6) overall financial resources of the covered entity; (7) overall size of the business of a covered entity; (8) the number, type, and location of its facilities; (9) type of operation or operations of the covered entity, including composition, structure, and functions of the workforce of such entity, and (10) geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity. <u>Garthright-Dietrich v. Atlanta Landmarks, Inc.</u>, 452 F. 3d 1269, 1272-73 (11th Cir. 2006)

The obligation to engage in readily achievable barrier removal is a continuing one. Over time, barrier removal that initially was not readily achievable may later be required because of changed circumstances. DOJ <u>ADA Title III Technical Assistance Manual</u>, Section III-4.4400 Continuing obligation.

14. A preliminary inspection of the Crown Plaza Orlando - Lake Buena Vista has shown that violations exist. These violations that Plaintiff has personally encountered or observed include, but are not limited to:

> A. <u>**Entrance Access and Path of Travel**</u>
>
> > 1. The Plaintiff had difficulty using the curb ramp located at the main lobby entrance. The side flares exceed the maximum slope allowance of 10%. Violation: This curb ramp contains a running slope in excess of 8.33% violating Section 4.7.2 of the ADAAG. Recommendation: Install a curb ramp with a running slope not greater than 8.33% in accordance with Sections 405.2 and 406.1 of the 2010 ADA Standards. Cost: $3,500. The removal of this barrier to access is readily achievable as this barrier is cited as an example of readily achievable in Section 36.304(b)(1) Removal of barriers–Installing ramps.
> >
> > 2. The Plaintiff had difficulty traversing the passenger loading zone as there is no marked access aisle or signage. Violation: Passenger loading zones shall provide access aisles adjacent to the vehicle pull-up space. Access aisles shall adjoin an accessible route and not overlap the vehicular way, in accordance with Section 503.3 in the 2010 ADA Standards. Recommendation: Provide an access aisle that is adjacent to the space. Cost: $500. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in Section 503 of the 2010 ADA Standards–Passenger Loading Zones.
> >
> > 3. The Plaintiff had difficulty traversing the parking lot to the main entrance of the facility as there is no marked accessible route within the site and the accessible parking spaces. Violation: At least one accessible route shall connect accessible buildings, accessible facilities, accessible elements, and accessible space that are on the same site. Recommendation: Add striping and marking indicating accessible route from the accessible parking spaces to the main entrance of the facility in accordance with Section 206.2.2 of the 2010 ADA Standards. Cost: $5,000. The removal of this barrier is readily available as this barrier is

        cited as an example of readily achievable in Section 206.2.2 in the 2010 ADA Standards–Accessible Routes.

    4.     The Plaintiff had difficulty using the curb ramp located across from the accessible parking at the main entrance to the facility. The running slope is greater than the required 8.33%. Violation: This curb ramp contains a running slope in excess of 8.33% violating Section 4.7.2 of the ADAAG. Recommendation: Install a curb ramp with a running slope not greater than 8.33% in accordance with Sections 405.2 and 406.1 of the 2010 Standards. Cost: $3,500. The removal of this barrier to access is readily available as this barrier is cited as an example of readily achievable in Section 36.304(b)(1) Removal of barriers-Installing ramps.

B.     **Public Restrooms - Men's Restroom**

    1.     The Plaintiff could not flush the toilet without assistance, as the flush valve is mounted on the walled area and not mounted on the wide area. Violation: The flush valve is not mounted on the wide area in violation of Sections 309 and 604.6 of the 2010 ADA Standards. Recommendation: Mount the flush control on the open side of the water closet to comply with Sections 309.2 and 604.6 in the 2010 ADA Standards. Cost: $450. The removal of this barrier to access is readily achievable as the cost is less than some the other examples of readily achievable listed in Section 35.304(b) Removal of barriers ADAAG.

    2.     The Plaintiff had difficulty utilizing the toilet seat cover as the toilet obstructs the clear floor space for an approach. Violation: A clear floor or ground space must be permitted in accordance with Sections 305 and 309.2 of the 2010 ADA Standards. Recommendation: Relocate the toilet seat dispenser to an accessible route of travel 36 inches wide minimum and provides a 30 inch by 48 inch clear floor space that allows for a side or forward approach. Dispensers must have all operable parts a maximum of 48 inches above the floor. Cost: $50. The removal of this barrier is readily achievable as the cost is less than some of the other examples of readily achievable listed in Sections 305 and 309.2 of the 2010 ADA Standards–Clear Floor or Ground Space, Operable Parts.

7

    3.    The Plaintiff had difficulty utilizing the toilet seat cover dispenser as the dispenser is mounted too high for an obstructed forward high reach or for an obstructed side reach. Violation: Where a high side reach is over an obstruction, the height of the obstruction shall be 34 inches maximum and the depth of the obstruction shall be 24 inches maximum in accordance with Sections 308.2.2, 308.3.2, and 309.3 of the 2010 ADA Standards. Recommendation: Relocate the toilet seat dispenser to an accessible route of travel 36 inches wide minimum and provides a 30 inch by 48 inch clear floor space that allows a side or forward approach. Dispensers must have all operable parts a maximum of 48 inches above the floor. Cost: $50. The removal of this barrier is readily achievable as the cost is less than some of the other examples of readily achievable listed in Sections 308.2.2, 308.3.2, and 309.3 of the 2010 ADA Standards – Reach Ranges, Operable Parts.

    4.    The Plaintiff had difficulty utilizing the mirror as it is installed above the required 40 inches maximum above the finish floor. Violation: Mirrors located above lavatories or countertops shall be installed with the bottom edge of the reflecting surface 40 inches above the finish floor in accordance with Section 603.3 of the 2010 ADA Standards. Recommendation: Lower the mirror not to exceed 40 inches above the finish floor. Cost: $100. The removal of this barrier to access is readily achievable as the cost is less than some of the other examples of readily achievable listed in Section 603.3 of the 2010 ADA Standards - Plumbing Elements and Facilities.

C.    <u>Gym</u>

    1.    The Plaintiff had difficulty utilizing the hand sanitizer and the paper towel dispenser as the height, measured to the operating mechanism exceeds the maximum height allowance of 48 inches above the finish floor. Violation: Where a forward reach is unobstructed, the high forward reach shall be 48 inches maximum, and the low forward reach shall be 15 inches above the finish floor or ground in accordance with Sections 308.2.1 and 309.3 of the 2010

       ADA Standards. Recommendation: Provide a lowered hand sanitizer and a lowered paper towel dispenser not to exceed 48 inches above the finish floor measured to the operating mechanism. Cost: $50. The removal of this barrier to access is readily achievable in Sections 308.2.1 and 309.3 of the 2010 ADA Standards–Reach Ranges.

  2.    The Plaintiff had difficulty utilizing the coat hook as the height exceeds the maximum height allowance of 48 inches above the finish floor. Violation: Where a forward reach is unobstructed, the high forward reach shall be 48 inches maximum, and the low forward reach shall be 15 inches above the finish floor or ground in accordance with Sections 308.2.1 and 309.3 of the 2010 ADA Standards. Recommendation: Provide a lowered coat hook not to exceed 48 inches above the finish floor measured to the operating mechanism. Cost: $50. The removal of this barrier to access is readily achievable in Sections 308.2.1 and 309.3 of the 2010 ADA Standards–Reach Ranges.

D.    **Common Area Dinning**

  1.    The Plaintiff had difficulty utilizing the dining tables as they do not provide 25 inches of toe clearance. Violation: The tables do not provide 25 inches maximum depth under an element violating Section 306.2.2 of the 2010 ADA Standards. Recommendation: Replace dining tables with tables that provide a maximum depth of 25 inches toe clearance to comply with Section 306.2 of the 2010 ADA Standards. Cost: $250. The removal of this barrier to access is readily achievable in Section 306.2.2 of the 2010 ADA Standards - Toe Clearance.

  2.    The Plaintiff had difficulty utilizing the dining tables as the dining area does not provide at least 5% of compliant accessible seating spaces. Violation: Where dining surfaces are provided for the consumption of food or drink, at least 5% of the seating spaces and standing spaces should comply with Section 226.1 of the 2010 ADA Standards. Recommendation: Add two additional accessible dining tables to comply with Section 226.1 of the 2010 ADA Standards. Cost: $250. The removal of this barrier to

9

        access is readily achievable in Section 226.1 of the 2010 ADA Standards–Dining Surfaces and Work Surfaces.

    3. The Plaintiff could not use the charging stations as the height exceeds the maximum height allowance. Violation: The tops of the work stations that are used as customer charging stations exceeds 34 inches above the finish floor violating Section 902.3 of the 2010 ADA Standards. Recommendation: Provide at least one work surface that can be used as a charging station 28 inches minimum and 34 inches maximum in height above the finish floor, complying with Section 902.3 of the 2010 ADA Standards. Cost: $500. The removal of this barrier to access is readily achievable in Section 902.3 of the 2010 Standards–Dining Surfaces and Work Surfaces.

E. **Pool Area**

    1. The Plaintiff could not use the pool gate with an unobstructed forward reach or with an unobstructed side reach without assistance because the gate hardware exceeds 48 inches above the finish ground. Violation: The pool gate hardware exceeds 48 inches above the finish ground, violating Sections 308.2.1, 308.3.1, and 309.3 of the 2010 ADA Standards. Recommendation: Provide a lowered pool gate entrance not to exceed 48 inches above the finish ground complying with Sections 308.2.1, 308.3.1, and 309.3 of the 2010 ADA Standards. Cost: $200. The removal of this barrier to access is readily achievable in Sections 308.2.1, 308.3.1, and 309.4 of the 2010 ADA Standards–Reach Ranges, Operable Parts.

    2. The Plaintiff had difficulty traversing the ramp leading to the pool as the ramp does not provide a level landing at the change of direction at the landing at the change of direction. Violation: Ramps that change direction between runs at landings shall have a clear landing 60 inches minimum by 60 inches minimum, violating Section 405.7.4 of the 2010 ADA Standards. Recommendation: Reconstruct ramp to be compliant. Cost: $3,500. The removal of this barrier to access is readily achievable in Section 405.7.4 of the 2010 ADA Standards – Ramps, Change in Direction.

  3. The Plaintiff had difficulty traversing the ramp leading to the pool as the ramp does not provide two compliant handrails. Violation: Handrails shall be provided on both sides of ramps, violating Sections 405.8, 505, and 505.2 in the 2010 ADA Standards. Recommendation: Provide compliant ramp handrails on both sides. Cost: $2,500. The removal of this barrier to access is readily achievable in Section 405.7.4 in the 2010 ADA Standards – Ramps, Handrails.

F. <u>Pool Area – Men's Accessible Restroom</u>

  1. The Plaintiff had difficulty utilizing the mirror as it is installed above the required 40 inches maximum above the finish floor. Violation: Mirrors located above lavatories or countertops shall be installed with the bottom edge of the reflecting surface 40 inches above the finish floor in accordance with Section 603.3 of the 2010 ADA Standards. Recommendation: Lower the mirror not to exceed 40 inches above the finish floor. Cost: $100. The removal of this barrier to access is readily achievable as the cost is less than some of the other examples of readily achievable listed in Section 603.3 of the 2010 ADA Standards - Plumbing Elements and Facilities.

  2. The Plaintiff had difficulty transferring to the toilet as the toilet's clear floor space was obstructed by the trash receptacle. Violation: Clearance around the toilet shall be 60 inches minimum measured perpendicular from the side wall and 56 inches minimum measured perpendicular from the rear wall in violation of Section 604.3.1 of the 2010 ADA Standards. Recommendation: Relocate the trash receptacle to a compliant location that will not obstruct the clear floor space for an approach to the toilet or another element, in compliance with Section 604.3.1 in the 2010 ADA Standards. Cost: $0. The removal of this barrier is cited as an example of readily achievable in Section 604.3.1 of the 2010 ADA Standards – Water Closets and Toilet Compartments.

G. <u>Guest Room 100</u>

    1. The Plaintiff had difficulty locating the accessible guestroom because signage with the International Symbol of Accessibility (ISA) mounted on the latch side of the door violating Sections 216.2 and 703 of the 2010 ADA Standards. Recommendation: Mount signage with the International Symbol of Accessibility (ISA) on the latch side of the door to comply with Sections 216.2 and 703 of the 2010 ADA Standards. Cost: $125. The removal of this barrier to access is readily achievable as the cost is less than some of the other examples of readily achievable listed in Sections 216.2 and 703 of the 2010 ADA Standards–Signs.

    2. The Plaintiff could not use the peephole as it exceeds the maximum height requirement of 48 inches above the finish floor. Violation: The peephole provided in the guest room is in violation of the requirements in Sections 308.2.1, 308.3.1, and 309.3 of the 2010 ADA Standards. Recommendation: Install a peephole no higher than 48 inches above the finish floor to comply with Sections 308.2.1, 308.3.1, and 309.3 of the 2010 ADA Standards. Cost: $50. The removal of this barrier is cited as an example of readily achievable in Sections 308.2.1, 308.3.1, and 309.3 of the 2010 ADA Standards–Reach Ranges and Operable Parts.

    3. The Plaintiff was exposed to burning hazard because the lavatory pipes are not wrapped. Violation: The lavatory pipes are not wrapped or insulated violating Section 606.5 of the 2010 ADA Standards. Recommendation: Insulate the lavatory pipes or otherwise configure to protect against contact to comply with Section 606.5 of the 2010 Standards. Cost: $75. The removal of this barrier to access is readily achievable as this barrier is cited as an example of readily achievable in Section 606.5 of the 2010 ADA Standards–Lavatories and Sinks.

    4. The Plaintiff could not use the air conditioning panel without assistance as it exceeds the maximum height requirement of 48 inches above the finish floor. Violation: The air conditioning panel provided in the guest room is in

    violation of the requirements in Sections 308.2.1, 308.3.1, and 309.3 of the 2010 ADA Standards. Recommendation: Lower the air conditioning panel to be no higher than 48 inches above the finish floor to comply with Sections 308.2.1, 308.3.1, and 309.3 of the 2010 ADA Standards. Cost: $250. The removal of this barrier is cited as an example of readily achievable in Sections 308.2.1, 308.3.1, and 309.3 of the 2010 ADA Standards–Reach Ranges and Operable Parts.

5. The Plaintiff could not transfer to the toilet without assistance as the required rear wall grab bar is not provided. Violation: The grab bars in the accessible guest room's bathroom do not comply with the requirements prescribed in Section 604.5.2 of the 2010 ADA Standards. Recommendation: Mount a rear wall grab bar in accordance with Section 604.5.2 of the 2010 ADA Standards. Cost: $250. The removal of this barrier to access is readily achievable as this barrier is cited as an example of readily achievable in Section 604.5.2 of the 2010 ADA Standards – Water Closets and Toilet Compartments, Grab Bars.

6. The Plaintiff had difficulty using the toilet paper as it exceeds the maximum distance from the toilet. Violation: The toilet paper dispenser provided is outside the range prescribed in Sections 309.4 and 604.7 of the 2010 ADA Standards. Recommendation: Re-mount the toilet paper dispenser within the compliant location of 7 inches minimum and 9 inches maximum in front of the water closet measured to the centerline of the dispenser. Cost: $50. The removal of this barrier to access is readily achievable as this barrier is cited as an example of readily achievable in Sections 309.4 and 604.7 of the 2010 ADA Standards – Water Closets and Toilet Compartments, Dispensers.

7. The Plaintiff could not use the standard roll-in shower controls without assistance as they are not provided on the back wall 27 inches in front of seat. Violation: The controls are not compliant location as the requirements prescribed in Section 608.5.2 of the 2010 ADA Standards. Recommendation: Install controls in accordance with

        Section 608.5.2 of the 2010 ADA Standards. Cost: $1,500. The removal of this barrier to access is readily achievable as this barrier is cited as an example of readily achievable in Section 608.5.2 of the 2010 ADA Standards – Shower Compartments.

8. The Plaintiff had to use caution as the shower spray unit does not provide an on/off control with a non-positive shut-off, violating Section 608.6 of the 2010 ADA Standards. Recommendation: Install a shower spray unit with a hose 59 inches long minimum that can be used as a fixed-position shower head and as a hand-held shower spray with an on/off control and a non-positive shut-off in accordance with Section 608.6 of the 2010 ADA Standards. Cost: $500. The removal of this barrier to access is readily achievable as this barrier is cited as an example of readily achievable in Section 608.5.2 of the 2010 ADA Standards–Shower Compartments.

9. The Plaintiff had to use caution as the standard roll-in shower provides a grab bar above the seat, violating Section 608.3.2 of the 2010 ADA Standards. Recommendation: Remove the grab bar above the seat in accordance with Section 608.3.2 of the 2010 ADA Standards. Cost: $250. The removal of this barrier to access is readily achievable as this barrier is cited as an example of readily achievable in Section 608.3.2 of the 2010 ADA Standards–Shower Compartments.

**H.** <u>**Lack of Compliant Disabled Rooms Not Properly Disbursed**</u>

1. The subject hotel lacks the required number of compliant accessible rooms and the compliant accessible rooms are not dispersed amongst the various classes of guest rooms, in violation of Section 224.5 of the 2010 ADAAG.

**I.** <u>**Maintenance**</u>

1. The accessible features of the facility are not maintained, creating barriers to access for the Plaintiff, as set forth herein, in violation of 28 C.F.R. § 36.211.

15. All of the foregoing violations are also violations of the 1991 Americans with Disabilities Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

16. The discriminatory violations described in paragraph 14 are not an exclusive list of the Defendant's ADA violations. Plaintiff requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access. The individual Plaintiff and all other individuals similarly situated have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's buildings and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above. The individual Plaintiff, and all others similarly-situated, will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein. In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendant's place of public accommodation in order to determine all of the areas of non-compliance with the Americans with Disabilities Act.

17. Defendant has discriminated against the individual by denying him access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of their places of public accommodation or commercial facilities in violation of 42 U.S.C. § 12181 *et seq.*, and 28 C.F.R. 36.302

*et seq.* Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly-situated by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

18. Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted. Furthermore, the public interest would not be disserved by a permanent injunction. Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205, and 28 C.F.R. 36.505.

19. Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendant to alter the Crown Plaza Orlando - Lake Buena Vista to make those facilities readily accessible to and useable by the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendant cures its violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

A. The Court issue a Declaratory Judgment that determines that the Defendant at the commencement of the subject lawsuit is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*

B. Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

C. An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205.

D. The Order shall further require the Defendant to maintain the required assessable features on an ongoing basis, and to require the institution of a policy that requires Defendant to maintain its accessible features on an ongoing basis.

  E. Such other relief as the Court deems just and proper and/or is allowable under Title III of the Americans with Disabilities Act.

            Respectfully Submitted,

            /s/John P. Fuller
            John P. Fuller, Esq.
            FL Bar No. 0276847
            Fuller, Fuller & Associates, P.A.
            12000 Biscayne Blvd., Suite 502
            North Miami, FL 33181
            Telephone (305) 891-5199
            Facsimile  (305) 893-9505
            jpf@fullerfuller.com
            jpfuller17@gmail.com

            Counsel for Rudolph Betancourt